UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #1-17-cv-00922-
 HALON DROZD, et al.,               : RMB-KHP

                   Plaintiffs,      :

  - against -                       :

 340 WEST 46TH STREET CORP., et al, : New York, New York
                                      October 2, 2017
                   Defendants.      :

------------------------------------ :

PROCEEDINGS BEFORE
THE HONORABLE JUDGE KATHARINE H. PARKER,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:         PECHMAN LAW GROUP PLLC
                        BY:  LOUIS PECHMAN, ESQ.
                             GREGORY S. SLOTNICK, ESQ.
                             LAURA G. RODRIGUEZ, ESQ.
                        488 Madison Avenue
                        New York, New York 10022
                        212-583-9500

For the Defendants:     KLEIN, ZELMAN, ROTHERMEL, JACOBS &
                        SCHESS, LLP
                        BY:  JESSE S. GRASTY, ESQ.
                             JANE B. JACOBS, ESQ.
                        485 Madison Avenue
                        New York, New York 10022
                        212-935-6020




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

## **INDEX**

### **E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

### **E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                      PROCEEDINGS              3

 2          THE CLERK:  Calling case 17-civil-922, Drozd v.

 3  340 West 46th Street Corp.

 4          HONORABLE KATHARINE H. PARKER (THE COURT):   All

 5  right, will counsel please make their appearances for the

 6  record?

 7          MR. LOUIS PECHMAN:  Good morning, Judge.  Louis

 8  Pechman, Laura Rodriguez and Gregory Slotnick from Pechman

 9  law Group for plaintiffs.

10          THE COURT:  Good morning.

11          MR. JESSE GRASTY:  Good morning, your Honor.

12  Jesse Grasty and Jane Jacobs from Klein, Zelman, Rothermel,

13  Jacobs & Schess for defendants.

14          THE COURT:  Good morning.

15          All right, I called this conference because the

16  parties seem to have a contentious dispute about remaining

17  discovery, and particularly the reopening of the deposition

18  of one of the defendants, is that right?

19          MR. PECHMAN:  Yes, your Honor.

20          THE COURT:  So Mr. Pechman will be speaking on

21  plaintiff's behalf, right?

22          MR. PECHMAN:  I'll take this one, your Honor.

23          THE COURT:  Okay.  So tell me why do you need to

24  reopen the deposition, and help me to understand why this

25  is needed for summary judgment purposes?
```

```
 1                         PROCEEDINGS                    4
```

 2           MR. PECHMAN:  Well, for purposes of summary

 3  judgment and also for purposes -- for trial.  Obviously,

 4  it's important to know whether someone had an ownership

 5  interest in the restaurant.  In particular, defendants

 6  paint a picture of Marcel Denamiel, who we understand is a

 7  former owner of the restaurant, as somebody who just hangs

 8  out in the restaurant 60 hours a week with no compensation.

 9  As it turns out, from our point of view, he's there, he's

10  active, he's managing, he's assigning people, he's hiring

11  all the plaintiffs.  Why is that important issue?  Of

12  course, for personal liability.  Marcel happens to own a

13  couple of buildings in Manhattan unencumbered by mortgages.

14  It's important for us in terms of -- for liability

15  purposes.

16           So what we have, incredibly, at the deposition of

17  his son, Paul, we said, "Was Marcel ever the owner?"  He

18  said no.  Now, that's important.  Defendants will have you

19  believe that, well, all that matters is the past six years

20  for statute of limitations.  Why is it important?  Because

21  they weave this incredible tale that he does nothing in the

22  restaurant, has no authority, none of the attributes of

23  somebody who's an employer under the Fair Labor Standards

24  Act.  And it's our contention -- and there's a few things

25  we are going to be asking your Honor to compel them to

```
 1                          PROCEEDINGS                    5
 2   provide -- is that at the point in time that he started
 3   collecting Social Security, they just paid him cash.  Well,
 4   what makes us believe that?  Well, the accountant said he
 5   started drawing a salary at that particular time, his hours
 6   didn't change, he continued to do the same work, the same
 7   performance; and, as we found from the accountant, at a
 8   certain point in time, Paul was also skimming $350,000 a
 9   year in cash from the restaurant.
10          So the notion that dad, who owned the restaurant,
11   is just hanging out for 60 hours a week, not getting any of
12   that $350,000, and not having any responsibility is really
13   blown away by the fact that he used to own the place and
14   he's doing the same thing, and where did all that cash go.
15   So for a number of reasons, we obviously didn't know that
16   at the time.  Silly us, we took somebody at their word that
17   the father never owned the restaurant; that it's something
18   that, look, if I owned a restaurant on Restaurant Row and I
19   had a 50% interest, it wouldn't have been something that
20   slipped my mind.  It wouldn't be particularly in this
21   situation.
22          So it's a blatant lie.  It goes to the heart of
23   liability for the father.  It goes to the heart of
24   liability in terms of what the transition was.  And unless
25   they want to stipulate that Marcel is an employer for
```

```
 1                           PROCEEDINGS                    6

 2   purposes of the Act, that information is critical.

 3           Now, with respect to summary judgment, we need to

 4   tie it up.  We can't have a loose end based on somebody's

 5   faulty memory, "Oh, I guess my dad was never the owner; we

 6   never were 50-50 owners."  We can't have that if we're

 7   making a motion for summary judgment.  They could just say,

 8   "Well, this is the deposition transcript."

 9           So what we want to do is we want to make a motion

10   for summary judgment, and we want to have the employer

11   liable.  We don't have to have a trial on this if we can

12   establish certain critical facts.  And one of those

13   critical facts is was Marcel ever the owner.  Now, what

14   defense counsel has done is they made an objection when we

15   asked for documents about the ownership interest.  They

16   came up with, "Well, it's a time-limited case.  You can

17   only go back for the past six years.  You can't go back

18   before."  Obviously, there's no basis for that.  I think

19   what we need from the Court, in addition to reopening the

20   deposition, is one, we need those documents in terms of

21   corporate ownership:  what was the transfer, what happened,

22   who owned what, who were the corporate officers.  Those are

23   documents that should be readily producible and should have

24   been produced already.

25           THE COURT:  Do you have them for the six-year
```

```
 1                         PROCEEDINGS                    7
 2   statute of limitations period?
 3              MR. PECHMAN:  No.  We have no documents at all in
 4   terms of ownership.
 5              And there is a tax form, 1225-E, which they did
 6   provide for one of the years.  So they should go back and
 7   plus 25E, the amount of tax may even -- might, as
 8   understand it, it lists income from the corporation, and it
 9   would be another way to identify who was the owner.  That's
10   an easy enough thing for them to do.
11              Now, their accountant, Marcel's accountant, Paul's
12   accountant, the restaurant's accountant, he said this
13   happened; he said they were 50% owners.  He testified what
14   we believe is truthfully.  And he had a logical story to
15   tell.  Marcel was the 50-50 owner, he went on Social
16   Security, and then he gave up ownership.  And what we
17   believe happened was he started getting cash.  Along the
18   lines of that, I think it's important -- and defense
19   counsel had directed Marcel not to answer this question at
20   the deposition, and we would like a ruling from your Honor
21   on that on the record today -- we asked how much is the
22   Social Security.  And Marcel was directed not to answer by
23   counsel.  We think we're entitled, given the circumstances,
24   to know how much that Social Security is.  Because,
25   obviously, it's a -- well, he's going to be losing three
```

1                              PROCEEDINGS                    8

2   grand a month, if he draws a salary, that's a reason for us

3   to be paying him in cash and letting him just be collecting

4   the Social Security.

5            THE COURT:  Do you have the amount of salary he

6   received prior to going onto --

7            MR. PECHMAN:  No.  They gave us a stiff arm on

8   everything.  Okay?  And it's like trust us even though

9   we're obviously lying.  And I don't say that lightly, your

10  Honor.

11           So for those reasons, we think it's compelling to

12  reopen the deposition; and at the very least, let's have

13  these documents, let's have these documents which prove

14  that Marcel was the owner.

15           THE COURT:  All right, I'll hear next from

16  defendants.

17           MR. GRASTY:  Thank you, your Honor.

18           It's interesting to hear counsel talk about

19  authority on the subject.  He submitted a motion, he

20  submitted a reply; yet, there's no authority that he's

21  cited anywhere why -- that establishes why, if Marcel had

22  ownership -- and I say "if" just to give him the benefit of

23  the doubt here -- if Marcel had ownership in 2003, how that

24  would be relevant to making him an employer under the law

25  in 2011, eight years later.  And there's a reason why he

 1

 2  didn't cite any authority on that point, your Honor,

 3  because there is none and he has none.

 4          You know, he's talking about what Bill Fordagne --

 5  that's the accountant that he's referring to -- that

 6  Mr. Fordagne testified that Marcel had an ownership

 7  interest in 2003 -- 1997 to 2003 is what Mr. Fordagne

 8  testified to.  I should point out that Mr. Fordagne, A, was

 9  testifying from his own memory; he admitted that he had

10  never seen any documents that actually established

11  ownership; he is their former accountant; he's been fired

12  because of really performance-based issues.  Also, before

13  deposing Mr. Fordagne, plaintiffs deposed Marcel.  And it

14  was both Marcel and Paul who testified that Marcel did not

15  have ownership interest and did not draw a salary since --

16  excuse me -- that he never had any ownership interest and

17  that he has not been paid recently.

18          You know, their focus on the time that he spent at

19  the restaurant, that's interesting to me because that's not

20  anything new.  I mean, that's something that they've known

21  all along.  Their clients told them that, I'm sure, from

22  day one.  And spending time at a location isn't something

23  that makes someone an employer.  Throughout the depositions

24  we've repeatedly questioned plaintiffs about what role did

25  Marcel play in the last six years, did he actually hire

1                          PROCEEDINGS                    10

2   someone, did he fire someone; and repeatedly they've said

3   that they can't cite anyone with specificity that they know

4   Marcel hired or fired.  They know that -- they can see that

5   Marcel had no role in setting their salaries, that he

6   wasn't involved in setting the schedule.  These are all the

7   things that go to establishing employer status, and they

8   have none of that.  So there's no reason to reopen Mr.

9   Denamiel, Paul Denamiel's deposition based on information

10  that they already have.

11          As to the tax issue that they've cited, yes, Paul

12  Denamiel had a tax issue.  He has filed amended tax

13  returns, and he has repaid all of that money.  So there's

14  no money that's hidden or gone anywhere.  He's made it

15  right with the government on that front.

16          So we just don't see how this is relevant at all.

17  Again, eight years prior, it doesn't connect in any way.

18          THE COURT:  Mr. Pechman, have the plaintiffs

19  testified as to specific roles that Marcel played during

20  the six-year limitation period?

21          MR. PECHMAN:  Yes, your Honor.  And they've also

22  testified that all these were long-term employees that were

23  hired by Marcel.  He -- assigns were his.  There's a tape

24  recording where Marcel is discussing the amount of the tip-

25  out to the bartenders and giving his opinion that it should

1

2  be 10% rather than 20%; and 10% in fact is what was

3  decided.

4          Now, there wasn't really hires before -- I mean,

5  during the time period, there's some evidence at Marcel's

6  deposition about him interviewing waitresses and what

7  constitutes a good waitress.  So there is substantial

8  evidence within the six-year period that he's doing the

9  function of an employer, including the disciplining in

10  terms of hiring, interviewing, that sort of a thing.

11          But the important thing here in terms of the

12  context is he was an owner; he was a 50% owner.  And, as

13  everybody testified, his role didn't change.  That's pretty

14  compelling.  And what I haven't heard from defense counsel,

15  which would be an easy sentence to say, is was Marcel ever

16  an owner.  As an officer of the court I think they should

17  be able to tell us here today was he an owner of the

18  restaurant or not.

19          THE COURT:  Well, let me ask defendants,

20  Mr. Grasty, can you provide the ownership information for

21  the six-year statute of limitation period?

22          MR. GRASTY:  We've provided a document, your

23  Honor.  It is a tax document.  I'm not sure why Mr. Pechman

24  believes it doesn't go to ownership, because it says

25  clearly 100% shareholder.  We've provided --

```
 1                      PROCEEDINGS              12
 2           THE COURT:  Is that applicable for the entire six-
 3  year period?
 4           MR. GRASTY:  It is not, your Honor.  It --
 5           THE COURT:  So I think --
 6           MR. GRASTY:  We've provided --
 7           THE COURT:  == I think it would be important to
 8  demonstrate that for the entire six-year period, who had
 9  the ownership interest.  So plaintiff is at least entitled
10  to know who was the owner during the six-year period.  So
11  you should provide documents demonstrating that.  And so
12  that's one; there needs to be production of who owned it.
13           The other question that I have is we have a
14  settlement conference coming up.  And are defendants going
15  to make any claim of financial hardship in connection with
16  paying out any settlement?
17           MR. GRASTY:  It would depend on where the finances
18  end up in this, your Honor, but I don't anticipate one.
19  There might be an issue of liquidity.
20           THE COURT:  Because if there's any claim of
21  financial hardship in terms of paying a settlement or
22  paying out a settlement, you need to provide the tax
23  information, including tax information and resources of the
24  individual defendants.
25           MR. GRASTY:  Yes, your Honor.  Let me clarify.
```

1                          PROCEEDINGS                    13

2   What I wanted to explain is it might be an issue of

3   liquidity.  For instance, Paul Denamiel is the owner of the

4   Brownstone Building in which the restaurant exists.  And

5   there's been testimony he's the 100% owner of that

6   building.  It's valued into the seven figures.  It would be

7   enough to pay off the judgment, but there is the liquidity

8   issue of how do you apply that.

9           THE COURT:  Okay.  Have you provided -- but he may

10  have other resources from which he can fund a settlement.

11  Also, he can take out a loan on any equity he has in

12  property, in real property.  So that can -- I don't know

13  that there's a liquidity issue in terms of funding as

14  settlement.  But plaintiffs are entitled to understand what

15  the financial situation is to pay any settlement.

16          MR. GRASTY:  Okay, they have not pushed us on

17  the -- I don't think they've made requests that I'm aware

18  of.

19          THE COURT:  Okay.  And in terms of the testimony

20  of the plaintiffs, did the plaintiffs testify that Marcel

21  was involved in conversations about tips and discipline

22  during the six-year period?

23          MR. GRASTY:  There was one conversation about tips

24  that he was involved in.  There's no testimony or any other

25  evidence that he was involved in discipline.  In fact, they

PROCEEDINGS                14

1
2  were each asked at length about those issues, and they said

3  no, they couldn't name anything.  Mr. Pechman, I'm sorry,

4  just made a misrepresentation when he said that Marcel

5  hired people and that they testified that he hired people.

6  That's not true.  They testified --

7         MR. PECHMAN:  I said he hired all the plaintiffs.

8  That's clear, correct?

9         MR. GRASTY:  No, it's not.  That's actually a

10  misrepresentation, too.  And I would ask that you go back

11  and perhaps read the transcripts because what it says is

12  that he interviewed them, he interviewed the plaintiffs,

13  all of whom were hired between, I think, 10 and 22 years

14  ago, your Honor, so, again, well beyond the statutory

15  period.  And even if he did interview them, which is not

16  what we're conceding at all, it's not relevant.

17         MR. PECHMAN:  And if I just might be heard just

18  for a moment?

19             THE COURT:  Sure.

20         MR. PECHMAN:  To us it's critical in terms of the

21  story, all right, that Marcel owned the place, okay, and

22  his staff remained the same.  It's a significant fact.  And

23  it's a significant fact that could be disclosed by

24  defendants with a minimal amount of effort, and that is,

25  let's see what the purchase and sale documents were, let's

1

2   see what the documents were from 2003 in terms of the

3   ownership.  And so for us it's more than just going back

4   within the six-year statute of limitations; this is

5   essential to what's the story.  Marcel holds him out, even

6   last year in a French newspaper, you know, he's pointed out

7   as the owner; he's on the website as the boss; he's out

8   there in public as the owner.  And here, when he comes into

9   court, it's going to be, "I know nothing, I see nothing,

10  I'm just a doddering old fool that likes to hang out at the

11  restaurant for 60 hours a week."  With respect to employer

12  status, the fact that, yes, he was the owner; yes, he was

13  50% owner; yes, it's just a matter of his compensation.  Of

14  course, whether somebody's an employer, it doesn't matter

15  if they get paid, if they don't get paid; it's one of those

16  factors.  And those factors continued in terms of him

17  assigning and in terms of him hiring, in terms of him

18  having all the attributes of an employer under the

19  standards of FLSA legal law.

20          THE COURT:  Well, what I've heard is that there's

21  a dispute as to whether there were actually any individuals

22  hired by him during the statute of limitations period.  And

23  similarly, I've heard that there's a dispute as to whether

24  he disciplined anyone during the statute of limitations

25  period.  What I heard is the only indicia of management

PROCEEDINGS                    16

1  │

2  │  authority he exercised is this discussion regarding the tip

3  │  within the six-year period.

4  │         But putting that aside, will defendants stipulate

5  │  that Marcel was an owner at some time, a 50% owner, and

6  │  transferred that interest to his son on such-and-such a

7  │  date?

8  │         MR. GRASTY:  No, your Honor, we cannot do that.

9  │         THE COURT:  Why not?

10 │         MR. GRASTY:  Because both Marcel and Paul have

11 │  testified that he was never an owner.

12 │         THE COURT:  Oh, okay.

13 │         MR. PECHMAN:  May I follow-up?

14 │         THE COURT:  Yes.

15 │         MR. PECHMAN:  That's exactly why we need the

16 │  documents.  That's why we need the corporate records.

17 │  Okay?

18 │         Now, coincidentally, Friday afternoon we received

19 │  a response from a FOIA request to the New York State Liquor

20 │  Authority.  Okay?  And we're following it up because we're

21 │  not getting any cooperation from defendants.  So this is

22 │  what we get Friday afternoon from the New York State Liquor

23 │  Authority.  On the application from 1997, when Marcel and

24 │  Paul, as we understand it from their accountant, were the

25 │  50-50 purchasers of the restaurant from Marcel's brother,

PROCEEDINGS                17

1   what does that liquor license say?  It says Marcel is the

2   president of the corporation, and Paul is the vice-

3   president of the corporation.  Even more glaring, it says

4   who's managing the restaurant, Marcel.  Oh, well, what do

5   you know?  Marcel was the 50% owner, and he was the

6   manager.  He wasn't a doddering old fool, according to what

7   defendants have submitted to the New York State Liquor

8   Authority.

9           THE COURT:  I'm going to require defendants to

10  produce the ownership information for the period -- the

11  statute of limitations period to the extent you haven't

12  produced it for that entire period.  I'd like you to

13  provide defendants with a copy of what you got from the

14  liquor licensing bureau.

15          We have a settlement conference --

16          MR. PECHMAN:  Judge, I --

17          THE COURT:  -- coming up, and what I'd like to do

18  is I don't think there should be discovery right now,

19  before the settlement conference.  I think we should go to

20  the settlement conference and see if this matter can be

21  resolved.  And then I may allow you to reopen a deposition

22  for limited purposes.  How long do you think you need, an

23  hour?

24          MR. PECHMAN:  Well, I would say an hour would be

PROCEEDINGS                    18

1

2  sufficient.  But, your Honor, I think what's critical, a

3  corporation has corporate records.  I haven't heard from

4  them that their corporate records show something different.

5  Unless things were burned in a fire, they should have the

6  same liquor license, right?  I mean, the heart and soul of

7  the restaurant.  It's not like this is something that

8  should be a surprise.  It's not like the certificate of

9  incorporation or the corporate records are unavailable.

10 There has to be some --

11         THE COURT:  Well, where is the certificate of

12 incorporation, don't you have that?

13         MR. GRASTY:  We -- but I don't believe we've been

14 asked for that.

15         THE COURT:  Okay, well, provide the certificate

16 of incorporation to the plaintiffs.

17         MR. PECHMAN:  But, Judge, what we would ask your

18 Honor, respectfully -- and it's not a burden but for us

19 it's critical -- from 1997 to present, the corporate

20 records, whether it's 20 pages or so.  Let them make copies

21 of it.  There has to be a transfer-of-ownership document;

22 there has to be something which says that Marcel is the

23 president.  I don't want to be in -- and it shouldn't be a

24 situation where we're giving defendants discovery about

25 their corporation.  It's absurd.

```
 1                        PROCEEDINGS                19
 2            THE COURT:  Well, what I'm asking them -- what
 3   I'm directing the defendants to do is to provide the
 4   certificate of incorporation and any filings with the state
 5   in terms of the corporate structure; and to the extent
 6   there were any amendments to that, provide that and also
 7   produce the tax forms for all years in the statute of
 8   limitations period.  Depending on what the corporate
 9   records say and the certificate of incorporation, then
10   there may be additional documents that I require you to
11   produce.
12            MR. PECHMAN:  Your Honor, respectfully, just to
13   be clear, the certificate of incorporation might not have
14   what the ownership interest is.  If you -- and this is not
15   a burdensome thing --
16            THE COURT:  Well, it should say who are the
17   owners and who are the directors and officers of the
18   company.
19            MR. PECHMAN:  And if it doesn't?
20            THE COURT:  Well, I believe that's required as
21   part of the filing with the secretary of state.  So why
22   don't you take a look at that, and then we'll deal with it,
23   if necessary, after the settlement conference, which is, I
24   believe, on Friday, if I'm not mistaken.
25            Has plaintiff already made a demand?
```

```
 1                         PROCEEDINGS                    20

 2            MR. PECHMAN:  Yes, your Honor.

 3            THE COURT:  Okay.  Have you responded?

 4            MS. JANE JACOBS:  No, we just received it.

 5            THE COURT:  You just received the demand.  Okay.

 6            MR. GRASTY:  We received it on Friday.

 7            THE COURT:  Okay.  So what I'd like you to do is

 8  make a response.  And we're going to see if we can get to a

 9  resolution.  The parties have been litigating this very

10  vigorously, and I want you to focus on potential compromise

11  for Friday.  If you can get this documentation to the

12  plaintiffs before Friday, that would be helpful.  And on

13  Friday, if you don't settle, then to the extent there needs

14  to be additional documentation or another hour of

15  deposition, we'll address it at that time.

16            Yes?

17            MR. GRASTY:  Yes, thank you, your Honor.  There's

18  one thing I wanted to address, which was in our opposition

19  to plaintiffs' motion, we raised the fact that we had our

20  own discovery issues that we wanted to raise.  It sounds

21  like what I'm hearing from your Honor is that you want us

22  to hold off on doing that until after Friday's conference,

23  is that --

24            THE COURT:  Yes, correct.

25            MR. GRASTY:  Okay.
```

```
 1                        PROCEEDINGS                21
 2              THE COURT:  I'd like you to focus on coming
 3   together for a compromise on Friday, and let's see if we
 4   can get a compromise resolution, because it's clear that
 5   there's potential briefing and a potential trial.  And it's
 6   going to be in everybody's best interest to try to resolve
 7   this as amicably as possible on Friday.  So I'm going to
 8   try to help you do that.  But what I'd like is a focus on
 9   getting to a potential resolution, and then we'll deal with
10   the discovery afterwards.  So if there needs to be
11   additional time or whatever, we'll deal with it at that
12   time, if we need to.
13              MR. GRASTY:  And a time frame for us to submit our
14   own motion, I'm assuming?
15              THE COURT:  Yes.
16              MR. GRASTY:  Thank you.
17              MR. PECHMAN:  And, your Honor, just for it to
18   bookmark, we have a couple of other items, if we're going
19   to be fleshing everything out.
20              THE COURT:  Yes, so we'll address -- anything that
21   needs to be done; we'll put that together, and whatever
22   time frame you need, we'll get that in place.  But what I
23   really want are the parties to think about a resolution.
24   So hopefully we can get to a resolution on Friday.  And
25   please come prepared to compromise.  Okay?
```

```
 1                      PROCEEDINGS                    22

 2          MR. PECHMAN:  Thank you, Judge.

 3          MR. GRASTY:  Thank you.

 4          (Whereupon, the matter is adjourned.)

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

23

C E R T I F I C A T E

    I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Halon Drozd, et al. v. 340 West 46th Street Corp., et al., Docket #17-cv-00922-RMB-KHP, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____

                 Carole Ludwig

Date:   October 4, 2017